United States District Court
Southern District of Texas
**ENTERED**
November 18, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| NEVILLE BRANDT MCCORKEL (TDCJ #2345695), Plaintiff, <br><br> VS. <br><br> DR. MARCO GOMEZ, in his individual and official capacities, <br> DR. GEORGE CANTU, in his individual and official capacities, <br> WARDEN F. GONZALEZ, in his individual and official capacities, <br> Y. CORTEZ, in his or her individual and official capacities, <br> DE LA CRUZ, in his or her individual and official capacities, <br> Defendants. | § § § § § § § § § § § § § § § § § § § CIVIL ACTION NO. 7:21-cv-00334 |

### REPORT AND RECOMMENDATION

Plaintiff, Neville Brandt McCorkel (TDCJ #2345695), a state prisoner proceeding *pro se* and *in forma pauperis* ("IFP"), filed a complaint pursuant to 42 U.S.C. § 1983 against two doctors, the Warden of the TDCJ Reynaldo V. Lopez Unit, the TDCJ Grievance Officer, and the TDCJ Medical Coordinator.

The case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b). After reviewing the record and applicable law, the undersigned recommends that Plaintiff's § 1983 claims against all Defendants be **DISMISSED with prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and Plaintiff's Motion to Amend Complaint (Dkt. No. 5) be **DISMISSED** as moot.

1

## BACKGROUND

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ"), serving time for possession of marijuana.[1] Plaintiff's complaint was received and filed in federal court on September 7, 2021. (Dkt. No. 1 at 1.) Plaintiff subsequently filed an Application to Proceed *In Forma Pauperis* (IFP). (Dkt. No. 2.) Plaintiff was granted leave to proceed IFP on September 10, 2021. (Dkt. No. 4.) Plaintiff then filed a Request to Make an Amendment ("Motion to Amend Complaint") on September 17, 2021, to substitute Warden F. Gonzalez as a defendant in place of Warden J. Garcia.[2] (Dkt. No. 5.) On September 20, 2021, the undersigned filed an Order for More Definite Statement, asking Plaintiff to clarify his allegations. (Dkt. No. 6.) On October 12, 2021, Plaintiff filed his More Definite Statement. (Dkt. No. 8.)

The individual defendants include: (1) Dr. Gomez, who is a health care professional employed by UTMB; (2) Dr. Cantu, who is a health care professional employed by UTMB; (3) Warden F. Gonzalez, who is the warden of the Reynaldo V. Lopez Unit; (4) Y. Cortez, who is the TDCJ Grievance Officer; and (5) De La Cruz, who Plaintiff alleges is the TDCJ Medical Director.[3] (Dkt. No. 1 at 3; Dkt. No. 5 at 1.)

---

[1] Offender Information Search, Texas Department of Criminal Justice, https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=03972869 (last visited October 13, 2021).

[2] Warden F. Gonzalez is the appropriate defendant as he is the warden of the Reynaldo V. Lopez Unit. *See* Correctional Institutions Division-State Operated State Jail, Texas Department of Criminal Justice, https://www.tdcj.texas.gov/unit_directory/rl.html (last visited October 15, 2021).

[3] The undersigned could not confirm an individual named Y. Cortez is the TDCJ Grievance Officer. Additionally, the undersigned found that Dr. Lannette Linthicum, not someone by the name De La Cruz, is currently the Director of the Health Services Division for TDCJ. *See* Health Services Division, Texas Department of Criminal Justice, https://www.tdcj.texas.gov/divisions/hsd/index.html (last visited October 15, 2021). The analysis outlined in this Report and Recommendation would be the same, regardless of the identity of the Grievance Officer or Medical Director.

A *pro se* petitioner is entitled to a more liberal construction of his filings, as *pro se* pleadings are held to less stringent standards than those drafted by practicing attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Peña v. United States*, 122 F.3d 3, 4 (5th Cir. 1997) ("Because [Plaintiff] is *pro se*, [the Court will] construe his pleadings liberally."). Accordingly, the undersigned finds Plaintiff asserts three sets of constitutional claims. The undersigned liberally construes Plaintiff's first set of claims to be that Dr. Gomez and Dr. Cantu denied him adequate medical care in violation of the Eighth Amendment. (Dkt. No. 1 at 3; Dkt. No. 8 at 1, ¶¶ 1-2.) Plaintiff's second set of claims are that the Warden, Y. Cortez, and De La Cruz, by ignoring Plaintiff's complaints regarding lack of hepatitis C virus (HCV) treatment, facilitated the denial of adequate medical care in violation of the Eighth Amendment. (Dkt. No. 1 at 3; Dkt. No. 8 at 3, ¶¶ 9-12.) Plaintiff's third set of claims are against the Warden, Y. Cortez, and De La Cruz concerning failure to adhere to the TDCJ's grievance procedures in violation of Plaintiff's procedural due process rights under the Due Process Clause of the Fourteenth Amendment. (Dkt. No. 1 at 3; Dkt. No. 8 at 3, ¶¶ 9-12.)

McCorkel has the hepatitis C virus (HCV) infection.[4] (Dkt. No. 1 at 3.) Plaintiff claims Dr. Gomez and Dr. Cantu were deliberately indifferent to his serious medical need by refusing to give Plaintiff HCV treatment. (Dkt. No. 1 at 3; Dkt. No. 8 at 1, ¶¶ 1-2.) Plaintiff asserts that he had "a few" in-person visits with Dr. Gomez during June and July of 2021 in the TDCJ Medical Facility at the Reynaldo V. Lopez Unit. (Dkt. No. 8 at 1, ¶ 1.) According to Plaintiff, Dr. Gomez refused to provide HCV treatment due to a TDCJ policy "to only monitor and observe as long as

---

[4] "Hepatitis C is a liver infection caused by the hepatitis C virus (HCV)." *See* Hepatitis C, Centers for Disease Control and Prevention, https://www.cdc.gov/hepatitis/hcv/index.htm (last visited October 15, 2021). "Chronic hepatitis C can result in serious, even life-threatening health problems like cirrhosis and liver cancer. People with chronic hepatitis C can often have no symptoms and don't feel sick." *Id.*

3

my enzyme count was below a certain number and that he was not going to refer me to the [h]epatitis C specialist for treatment." (Dkt. No. 8 at 1, ¶ 1 (cleaned up).) Additionally, Plaintiff had one in-person visit with Dr. Cantu in September of 2021 in TDCJ Medical Facility at the Reynaldo V. Lopez Unit. (Dkt. No. 8 at 1, ¶ 2.) Dr. Cantu gave Plaintiff the same reason as Dr. Gomez as to why Plaintiff would not be receiving HCV treatment—Plaintiff's enzyme count was not high enough to get the treatment and he would not refer Plaintiff to an HCV specialist. (Dkt. No. 8 at 1, ¶ 2.) Plaintiff states Dr. Cantu told him the supervisor of the UTMB Hepatitis C Clinic is the person who sets the number of enzymes required to warrant HCV treatment. (Dkt. No. 8 at 1, ¶ 2.) Plaintiff did not see any other doctors or medical staff while at the Reynaldo V. Lopez Unit. (Dkt. No. 8 at 1, ¶ 3.) Plaintiff alleges he has received no HCV treatment and continues to be without HCV treatment. (Dkt. No. 8 at 2, ¶ 4.) Plaintiff claims that each day his HCV goes untreated, leads to "irreparable damage to [his] liver leading to cirrhosis of the liver and ultimately to [Plaintiff's] untimely death." (Dkt. No. 8 at 2, ¶ 6.)

Plaintiff also argues that Warden F. Gonzalez "condon[ed] the denial of the grievance process," that Y. Cortez did not provide an alternative to filing a formal complaint, and that De La Cruz "allow[ed] medical neglect to continue uncontested." (Dkt. No. 1 at 3.) When asked to clarify these statements in the Order for More Definite Statement (Dkt. No. 6 at 4, ¶¶ 9-12), Plaintiff argued that Warden F. Gonzalez did not answer any of Plaintiff's I-60 request forms[5] and did not speak to Plaintiff in-person about Plaintiff's lack of HCV treatment. (Dkt. No. 8 at 3, ¶ 9.) Plaintiff concludes that, as an effect of the non-response, he was denied access to the grievance process. *Id.* Plaintiff makes the same claim against Y. Cortez. (Dkt. No. 8 at 3, ¶ 10.) Plaintiff

---

[5] Plaintiff states, "I followed TDCJ policies and procedures and submitted several I-60 request forms to UTMB medical staff between July and September of 2021 which were never answered or returned to me. I also submitted I-60 request forms to the TDCJ Medical Coordinator and the Unit Warden between July and September of 2021 these also were never answered or returned to me." (Dkt. No. 8 at 2, ¶ 5.)

4

makes a third, similar claim against De La Cruz and adds that De La Cruz's alleged refusal to speak to Plaintiff regarding the alleged "neglect" was, in effect, "allowing the neglect to continue." *Id.* at ¶¶ 11-12.

Plaintiff's requested relief is $700 per day for every day he is incarcerated and "denied the cure for [h]epatitis C" and asks "that [Defendants] give [him] the cure." (Dkt. No. 1 at 4.)

## APPLICABLE LAW AND ANALYSIS

### I. Applicable Law

#### a. Prisoner Litigation Reform Act

Pursuant to the Prison Litigation Reform Act (PLRA), the Court shall dismiss a case at any time if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A.[6]

"A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). The PLRA and Federal Rule of Civil Procedure 12(b)(6) standards for dismissal of a complaint for failure to state a claim are distinct, however, they share "considerable common ground." *Neitzke v. Williams*, 490 U.S. 319, 325-28 (1989). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section [PLRA] frivolousness standard is not." *Moore v. Mabus*, 976 F.2d 268, 269-70 (5th Cir. 1992).

---

[6] A plaintiff proceeding *in forma pauperis* is still subject to PLRA screening. *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998).

5

To survive a § 1915(e)(2)(B) dismissal, a complaint "must [still] contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged" for the claim to have facial plausibility. *Id.* The plausibility standard requires a plaintiff to plead factual content that shows "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "When a complaint is facially frivolous and insubstantial, it is insufficient to invoke the jurisdiction of a federal court." *Dilworth v. Dallas Cty. Cmty. Coll. Dist.*, 81 F.3d 616, 617 (5th Cir. 1996) (citations omitted).

Importantly, a *pro se* petitioner is entitled to a more liberal construction of his filings, as *pro se* pleadings are held to less stringent standards than those drafted by practicing attorneys. *See Haines*, 404 U.S. at 520; *Peña*, 122 F.3d at 4. However, "*pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

### b. Official Capacity Claims and Monetary Damages

To the extent Plaintiff sues Defendants in their official capacities as state employees, the Eleventh Amendment entitles Defendants to immunity from claims for monetary damages. *See Prescott v. Pace*, No. 3:18-CV-0378, 2018 WL 6386216, at *3 (S.D. Tex. Dec. 6, 2018).

"A claim against an official employed by UTMB in his or her official capacity is a claim against UTMB, a state agency, and thus a claim against the State of Texas." *Prescott*, 2018 WL 6386216, at *3 (citing *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008)). Likewise, a claim against a TDCJ official in his or her official capacity is a claim against TDCJ, an "instrumentality of the state," and thus a claim against the State of Texas. *Thornton v.*

*Merch.*, 342 F. App'x 10, 11 (5th Cir. 2009). Unless a state consents to be sued, either by waiving its sovereign immunity or Congress' clear abrogation of a state's immunity, then a federal court is without jurisdiction over suits against a state, state agency, or state official in his or her official capacity. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015). "Texas has not consented by statute, and § 1983 does not abrogate state sovereign immunity." *Id.* at 394 (citing *Quern v. Jordan*, 440 U.S. 332, 340 (1979)).

However, "Suits by private citizens against state officers in their official capaci[ies] are not . . . categorically barred." *Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015). A plaintiff seeking injunctive relief against a state actor is not suing the state, but rather, a private person subject to suit. *NiGen Biotech*, 804 F.3d at 394.

Accordingly, Dr. Gomez and Dr. Cantu, as officials employed by UTMB, and the Warden, Y. Cortez, and De La Cruz, as officials employed by the Texas Department of Criminal Justice, are state actors immune from claims seeking *only* monetary damages, however, Defendants are not immune from claims seeking injunctive relief. Since Plaintiff's claims seek both monetary and injunctive relief from Defendants, the undersigned will analyze all claims against these state actors in their official capacities, while noting that Defendants, in said official capacities, are entitled to immunity from monetary damages.

### c. Denial of Adequate Medical Care in Violation of the Eighth Amendment

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Notably, deliberate indifference is an extremely high standard. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). A plaintiff needs to show: (1) a serious medical need, (2) officials were subjectively aware of this need, and (3) the officials, despite actual

7

knowledge of the serious need, denied or delayed the prisoner's medical treatment. *Id.* To establish deliberate indifference, a plaintiff can present evidence prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (cleaned up); *see also Estelle*, 429 U.S. at 104-05. The mental state evaluated is subjective recklessness, which occurs when a person disregards a risk of harm of which he is aware. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Further, a prison official acts or fails to act with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

"State officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676; *see also Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691-93 (1978) (holding there is no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). A plaintiff must establish a supervisor's liability either through (1) a showing of affirmative participation in the acts causing the constitutional deprivation, or (2) a showing the supervisor implemented unconstitutional policies that resulted in the constitutional injury. *Gates v. Texas Dept. of Protective and Regulatory Services*, 537 F.3d 404, 435 (5th Cir. 2008). The second prong requires the supervisor to have adopted the alleged policy with "deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

**II. Analysis**

### a. Claims against Dr. Gomez and Dr. Cantu, in their Official and Individual Capacities, Should be Dismissed with Prejudice

Plaintiff claims Dr. Gomez and Dr. Cantu were deliberately indifferent to his serious medical need by refusing to give Plaintiff HCV treatment. (Dkt. No. 1 at 3; Dkt. No. 8 at 1, ¶¶ 1-2.) According to Plaintiff, both Dr. Gomez and Dr. Cantu refused to provide HCV treatment due to a TDCJ policy "to only monitor and observe as long as my enzyme count was below a certain number and that [they were] not going to refer me to the [h]epatitis C specialist for treatment." (Dkt. No. 8 at 1, ¶ 1 (cleaned up).)

Because Plaintiff's claims invoke the Eighth Amendment, "the sole question before [the Court] is whether [the doctors'] approach to the treatment of [Plaintiff] is so reckless—so conscience-shocking—that it violates the Constitution." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1272 (11th Cir. 2020). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *see also Estelle,* 429 U.S. at 107 (stating a decision regarding additional treatment "is a classic example of a matter for medical judgment"). Generally, a plaintiff's disagreement with medical care does not state a claim of deliberate indifference to a serious medical need. *Petzold*, 946 F.3d at 249; *see also Ferguson v. Arce*, 101 F. App'x 980, 981 (5th Cir. 2004) (cleaned up) (holding the plaintiff "alleged no facts that would show that the defendants were deliberately indifferent to serious medical needs" when the plaintiff submitted documents with his complaint showing his hepatitis C "has been monitored and treated based on his health status"); *Grumbles v. Livingston*, 706 F. App'x 818, 819 (5th Cir. 2017) ("[C]onsistent with TDCJ Hepatitis C policy, Grumbles was followed in a Hepatitis C chronic care clinic while

9

in TDCJ custody and his Hepatitis C was monitored and evaluated periodically through chronic care visits and medical testing.")

The result of the TDCJ's alleged policy may mean Plaintiff is not receiving the treatment he wants, as quickly as he wants it, but Dr. Gomez and Dr. Cantu, by following the policy, are not ignoring or acting deliberately indifferent towards Plaintiff and his serious medical need. By Plaintiff's own account, Dr. Gomez and Dr. Cantu are providing Plaintiff medical attention in the form of monitoring, observing, and evaluating Plaintiff on multiple occasions, including testing Plaintiff's enzyme levels to see if Plaintiff needs more aggressive treatment. (Dkt. No. 8 at 1, ¶¶ 1-2.) Further, Dr. Gomez and Dr. Cantu both exercised medical judgment in their decisions not to refer Plaintiff to the HCV specialist. *Id.* Although Plaintiff believes he needs HCV treatment, both Defendants Gomez and Cantu disagree and believe HCV treatment is currently unnecessary. *Id.* The disagreement between Plaintiff and Defendants Dr. Gomez and Dr. Cantu regarding proper treatment does not state a claim of deliberate indifference to a serious medical need. Since Plaintiff is receiving medical care and Plaintiff's claim does not rise to the level of a constitutional violation, Plaintiff's constitutional claims against Dr. Gomez and Dr. Cantu, in their official and individual capacities, should be dismissed with prejudice.

### b. Claims Against Warden F. Gonzalez, Y. Cortez, and De La Cruz, in their Official and Individual Capacities, Should be Dismissed with Prejudice

Plaintiff argues that Warden F. Gonzalez "condon[ed] the denial of the grievance process," that Y. Cortez did not provide an alternative to filing a formal complaint, and that De La Cruz "allow[ed] medical neglect to continue uncontested." (Dkt. No. 1 at 3.) When asked to clarify these statements, Plaintiff argued that Warden F. Gonzalez did not answer any of Plaintiff's I-60 request forms and did not speak to Plaintiff in-person about the matter. (Dkt. No. 8 at 3, ¶ 9.) Plaintiff concludes that, as an effect of the non-response, he was denied access to the grievance

process. *Id.* Plaintiff makes the same claim against Y. Cortez. (Dkt. No. 8 at 3, ¶ 10.) Plaintiff makes a third, similar claim against De La Cruz and adds that De La Cruz's alleged refusal to speak to Plaintiff regarding the alleged neglect was, in effect, "allowing the neglect to continue." *Id.* at 3, ¶¶ 11-12. Read liberally, Plaintiff is asserting two categories of claims: (1) claims against the Warden, Y. Cortez, and De La Cruz for deliberate indifference to Plaintiff's serious medical need in violation of the Eighth Amendment based on their failure to address Plaintiff's complaints regarding lack of HCV treatment, and (2) claims against the Warden, Y. Cortez, and De La Cruz concerning failure to adhere to the TDCJ's grievance procedures in violation of Plaintiff's Fourteenth Amendment procedural due process rights.

### i. Claims Concerning Eighth Amendment Violation

Plaintiff cannot demonstrate that the Warden, Y. Cortez, or De La Cruz knew Plaintiff was facing a risk of serious bodily harm and disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 847. The undersigned declines to address the objective prong of the analysis of whether Plaintiff's HCV, left untreated, poses a substantial risk of serious harm. *See Hoffer*, 973 F.3d at 1270–71 ("And although the parties spar over the subsidiary question whether chronic HCV constitutes a condition 'that, if left unattended, poses a substantial risk of serious harm' to . . . inmates, . . . it is unnecessary to address that issue.") Instead, the undersigned concludes that even if Plaintiff could satisfy the objective prong of the Eighth Amendment standard, he has not shown that the Defendants' response to his medical need rose to the level of deliberate indifference.

Plaintiff has alleged no facts demonstrating the Warden, Y. Cortez, or De La Cruz, in their official or individual capacities, even knew about Plaintiff's serious medical need, let alone were

11

deliberately indifferent to it.[7] There is no evidence Defendants prevented Plaintiff from seeking medical attention and, as Plaintiff alleges, Plaintiff was evaluated, monitored, and observed by two different doctors on three occasions over a four-month period. (Dkt. No. 8 at 1, ¶¶ 1-2.) Therefore, Plaintiff's claims against Defendants F. Gonzalez, Y. Cortez, and De La Cruz, in their official and individual capacities, should be dismissed with prejudice for failure to state a claim.[8]

### ii. Claims Concerning Grievance Procedures

To state a valid claim under the Due Process Clause, a plaintiff must first show that "there exists a liberty or property interest which has been interfered with by the State." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). "There is no constitutionally protected interest in the processing of an inmate's grievances." *Bell v. Woods*, 328 F. App'x 391, 393, 2010 WL 2545421, at *2 (5th Cir. 2010). "The Fifth Circuit has made clear that an inmate has no constitutional interest in the TDCJ's alleged failure to follow its policies and procedures when processing his grievances." *Summers v. Davis*, 2018 WL 3093621, at *4 (S.D. Tex. 2018) (citing *Brewster v. Dretke*, 587 F.3d 764, 648 (5th Cir. 2009)); *see also Prescott*, 2018 WL 6386216, at *5 n.6 (noting courts have repeatedly dismissed lawsuits brought by prisoners to challenge TDCJ's administration of its grievance procedure). Where a petitioner asserts he or she has a federally protected liberty interest in having their grievances solved to his or her satisfaction, he or she

---

[7] By Plaintiff's own admission, Plaintiff was given the wrong book with the list of Unit Officials, and he only "recently became aware" of this. (Dkt. No. 5.) This shows that it is likely Plaintiff was addressing his I-60 forms to Warden J. Garcia, not Warden F. Gonzalez.

[8] *See Davidson v. Tex. Dep't of Criminal Justice, Institutional Div.*, 91 F. App'x 963, 966 (5th Cir. 2004) (affirming the district court's dismissal as frivolous the petitioner's § 1983 action alleging that prison officials violated his constitutional rights by refusing to treat his hepatitis B and C by medicating him with interferon).

"relies on a legally nonexistent interest," resulting in a due process violation claim that is "indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).

Accordingly, Plaintiff does not have a right to have his I-60 request forms answered by the named defendants nor does he have a right to speak with them in person when he has a complaint. The TDCJ, as Plaintiff acknowledges and details, has a formal grievance process to resolve health-related issues. (Dkt. No. 8 at 2-3, ¶¶ 7-8.) Plaintiff claims he was unable to file a grievance because he could not fill out the section of the grievance form regarding his attempts to resolve the problem with a staff member before submitting a formal complaint. (Dkt. No. 8 at 2-3, ¶ 8.)

Plaintiff's misunderstanding of the grievance form, not any act or omission on the part of the Warden, Y. Cortez, or De La Cruz, is the reason Plaintiff did not move forward in the grievance process. The grievance form asks Plaintiff to list his *attempts* to resolve the problem with a staff member; it did not require Plaintiff to have had the I-60 forms answered.[9] (Dkt. No. 8 at 2-3, ¶ 8.) Plaintiff could have simply put "none" as the response received to his requests.

Based on the foregoing facts, the undersigned recommends Plaintiff's claims against Defendants F. Gonzalez, Y. Cortez, and De La Cruz, in their official and individual capacities, regarding the processing of his administrative grievances be dismissed for failure to state a claim upon which relief can be granted.

### iii. Plaintiff Fails to Allege a Basis for Supervisory Liability

Plaintiff claims De La Cruz "allow[ed] medical neglect to go uncontested." (Dkt. No. 1 at 3.) Since Plaintiff's allegations against the Warden, Y. Cortez, and De La Cruz are substantially

---

[9] "If you have submitted a sick call request and an I-60 request following [TDCJ] guidelines but have not received a response, you may file a Step 1 grievance." *See* Requesting Medical Care in a Texas Prison, Texas Law Help, https://texaslawhelp.org/article/requesting-medical-care-in-a-texas-prison (last accessed October 14, 2021).

13

the same, the undersigned will consider that assertion as raised against the Warden and Y. Cortez as well.

As explained, state officials, in their individual capacities, cannot be held liable for the wrongdoing of other employees. *Monell*, 436 U.S. at 691. A plaintiff must establish a supervisor's liability either through (1) a showing of affirmative participation in the acts causing the constitutional deprivation, or (2) a showing the supervisor implemented unconstitutional policies that resulted in the constitutional injury. *Gates*, 537 F.3d at 435 (5th Cir. 2008).

Plaintiff does not show that De La Cruz, the Warden, or Y. Cortez affirmatively participated in Plaintiff's alleged lack of medical care – the doctors' refusal to treat Plaintiff's HCV. Notably, Plaintiff even describes the alleged injury as "medical neglect," which does not rise to the level of a constitutional violation.[10] Also, Plaintiff did not allege the Warden, Y. Cortez, or De La Cruz were in any way involved in implementing the alleged policy that resulted in the alleged constitutional injury. Therefore, Plaintiff has not established a basis for supervisory liability regarding the Warden, Y. Cortez, or De La Cruz, in their individual capacities.

Accordingly, Plaintiff's constitutional claims against Defendants F. Gonzalez, Y. Cortez, and De La Cruz, in their official and individual capacities, should be dismissed with prejudice for failure to state a claim, noting a failure to allege a basis for supervisory liability.

## CONCLUSION

### *Recommended Disposition*

---

[10] Generally, § 1983 is not the appropriate vehicle for plaintiffs to raise tort claims. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

14

After a careful review of the filings, record, and relevant law, and for reasons set forth above, the undersigned recommends that Plaintiff's § 1983 claims be **DISMISSED** with prejudice for the reasons noted and Plaintiff's Motion to Amend Complaint (Dkt. No. 5) be **DISMISSED** as moot.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from de novo review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Plaintiff.

**DONE** at McAllen, Texas, this 18th day of November, 2021.

Juan F. Alanis
United States Magistrate Judge